## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MARLA F. CRAWFORD,

     Plaintiff,

   v.

PRINCE GEORGE'S COUNTY
BOARD OF EDUCATION,

     Defendant.

Civil Action No. TDC-22-2669

## MEMORANDUM OPINION

Plaintiff Marla F. Crawford has filed a civil action against Defendant Prince George's County Board of Education (the "Board") alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, arising from her employment with the Prince George's County Public Schools ("PGCPS"). The Board has filed a Motion for Summary Judgment, which is fully briefed. ECF No. 46. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

### I.    Employment History

Dr. Marla F. Crawford, a high school science teacher, began her employment with PGCPS in September 2014. On July 6, 2015, Crawford transferred to and began working in a permanent 12-month teaching position at International High School in Largo, Maryland.

Between August 31, 2017 and November 24, 2017, Crawford took an extended leave of absence pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654.

Subsequently, between November 2017 and August 2019, Crawford took multiple additional leaves of absence, including in relation to injuries sustained in a January 2019 incident when she was hit by a car while walking. Based on a recommendation from her physician stating that she could return to work as of June 11, 2019 with certain accommodations, including limitations on the amount of time she needed to stand and talk, PGCPS initially approved her return to work as of that date, but on June 12, 2019, PGCPS rescinded that approval on the grounds that it could not accommodate the proposed restrictions on her work.

Meanwhile, on May 30, 2019, Crawford exhausted her accrued sick leave, and she was placed on an approved unpaid leave of absence. PGCPS, which has written policies and procedures relating to leaves of absence, informed Crawford that her health insurance benefits would terminate unless she was on an authorized leave of absence program relating to such benefits. While on such a program, an employee is responsible for paying 100 percent of the employee's health insurance premiums. Although Crawford later sought to extend her approved unpaid leave of absence until February 3, 2020, PGCPS declined to extend it beyond August 15, 2019 and directed Crawford to "[r]esubmit the necessary documentation," "[r]eturn to work immediately," "[s]ubmit a letter of resignation," or "[a]pply for retirement, if applicable." Joint Statement of Undisputed Facts ("JSUF") ¶ 12, Mot. Summ. J. at 2–6, ECF No. 46-1. PGCPS further informed Crawford that her failure to take one of these actions would result in her placement "on a leave without pay and in a no pay status, which will terminate all benefits." *Id.*

On August 7, 2019, Crawford submitted a request for an accommodation pursuant to PGCPS Administrative Procedure 4172 ("AP 4172") through which she sought a transfer to an alternate worksite and other accommodations. On August 13, 2019, the Board denied the request

2

to transfer and scheduled an interactive meeting to discuss Crawford's remaining accommodation requests.

On February 27, 2020, Crawford submitted a request for intermittent leave under the FMLA based on injuries suffered in a February 25, 2020 motor vehicle accident, which was denied because Crawford had not worked the required 1,250 hours during the preceding 12-month period. That same date, Crawford submitted another request for accommodations pursuant to AP 4172.

On March 2, 2020, PGCPS provided written notice to Crawford that her period of approved leave had ended on August 15, 2019 and that she was supposed to have returned to work after that date or at the start of the school year but had failed to do so. PGCPS further informed Crawford that if she did not respond to clarify her work status and either return to work, submit her resignation, or apply for retirement within 10 days, she would be placed in a "leave without pay status." JSUF ¶ 18. Crawford submitted another request for intermittent leave, which was denied on March 3, 2020 because she had exhausted all of her sick leave and other available leave, and she had not worked the required amount to qualify for leave under the FMLA.

On March 10, 2020, Crawford sent emails to multiple PGCPS officials "requesting a meeting to address [her] medical accommodations for returning to work" and identifying certain duties she could perform while transitioning back to work. 3/10/20 Crawford Email, Compl. Ex. 7, ECF No. 1-2. On March 11, 2020, Amana Simmons, the PGCPS Equal Employment Opportunity ("EEO") Advisor, responded and directed Crawford to complete and submit an AP 4172 Request for Accommodations as well as a "Medical Inquiry Form" completed by her healthcare provider. 3/11/20 Simmons Email, Compl. Ex. 7, ECF No. 1-2. Simmons stated that, upon receipt of these documents, PGCPS would schedule an interactive meeting to discuss the accommodation request.

3

On March 12, 2020, Crawford submitted a PGCPS Certificate of Medical Release in which her physician certified that she could return to work with certain restrictions in that she could not stand for long periods of time or lift more than five pounds. The physician identified the following requested accommodations that Crawford needed: (1) no standing for longer than one hour at a time; (2) no speaking for more than 30 to 40 minutes at a time; (3) no lifting of more than 5-10 pounds; (4) frequent breaks "as needed for increase in symptoms"; and (5) a change of work location "as current site has become hostile." Cert. of Med. Release at 1, Compl. Ex. 6, ECF No. 1-2.

On March 16, 2020, because of the COVID-19 pandemic, all Maryland public school systems transitioned to online learning for the remainder of the 2019–2020 school year. At some point after that transition, Crawford requested permission to work from home, but that request was denied.

On March 20, 2020, Crawford and Simmons had a telephonic meeting to discuss the accommodations requested in the Certificate of Medical Release. During that meeting, Simmons requested "more specificity regarding [Crawford's] speech and ambulatory limitations." Simmons Letter at 1, Opp'n Ex. 3, ECF No. 49-3.

On May 11, 2020, PGCPS notified Crawford that her health insurance benefits had been terminated. Crawford was also informed that in order to reinstate her insurance coverage, she would need to pay her employee share retroactive to February 29, 2020.

On June 1, 2020, in apparent response to Simmons's March 20, 2020 request, PGCPS received supplemental correspondence from Crawford's healthcare provider, dated May 18, 2020, that clarified the accommodations sought in Crawford's most recent request as no walking or standing for longer than 25 to 30 minutes at a time and no talking for more than 30 minutes at a

4

time. On June 3, 2020, Simmons sent a letter to Crawford agreeing to the following accommodations: (1) allowing her to sit during oral instruction for 30 minutes out of a 76-minute class, but requiring her to stand or circulate within the classroom for the remainder of the time; (2) providing her with a stool or chair in the classroom for brief rest if necessary; and (3) providing her with lifting assistance during classroom setup and breakdown. As to the request to transfer, Simmons informed Crawford that there were no vacancies for 12-month teaching positions but that she would be allowed to transfer voluntarily to a 10-month teaching position. On June 9, 2020, the Board sent Crawford a Notice of Eligibility to Return to Work with reasonable accommodations. There is no evidence in the record of further communications between Crawford and PGCPS.

## II.   Procedural History

On June 5, 2020, Crawford filed a Charge of Discrimination ("the EEOC Charge") with the Prince George's County Human Relations Commission and the United States Equal Employment Opportunity Commission ("EEOC"). In the EEOC Charge, Crawford alleged disability discrimination in that (1) on March 13, 2020, her physician cleared her to return to work with medical accommodations, but she was nevertheless denied permission to work; and (2) she had been discriminated against on the basis of disability when her request to work from home was not granted even though all other teachers were permitted to work remotely. On July 21, 2022, Crawford received a Notice of Right to Sue from the EEOC.

On October 18, 2022, Crawford filed the Complaint in this case which, construed liberally, alleged claims of disability discrimination under the ADA and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. On December 1, 2023, this Court granted in part and denied in part a Motion to Dismiss filed by the Board. Specifically, the

5

Court rejected the Board's argument that the Complaint was time-barred; granted the motion as to the retaliation claims based on a failure to exhaust administrative remedies and dismissed those claims; and denied the motion as to the disability discrimination claims because Crawford had plausibly alleged a claim that the Board failed to provide a reasonable accommodation, including by unreasonably delaying its approval of Crawford's request for reasonable accommodations.

## DISCUSSION

In the Motion for Summary Judgment, the Board seeks summary judgment on the grounds that Crawford has failed to establish that there is sufficient evidence to support a claim of disability discrimination, whether based on a failure to provide a reasonable accommodation or based on disparate treatment.

## I.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

6

## II.    ADA Claims

The Board argues that it is entitled to summary judgment on Crawford's disability discrimination claims under the ADA. Construed liberally, Crawford alleges in the Complaint that based on events occurring from February 27, 2020 through June 9, 2020, she was subjected to disability discrimination resulting from (1) a failure to provide a reasonable accommodation to her medical needs; and (2) disparate treatment in that she was denied the opportunity to work from home because of her disability, while teachers without disabilities were permitted to do so during the COVID-19 pandemic. These theories of disability discrimination are encompassed in Title I of the ADA, which addresses employment discrimination against persons with disabilities and provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

### A.    Failure to Provide a Reasonable Accommodation

Under the ADA, disability discrimination in employment includes:

> [N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C § 12112(b)(5)(A). To establish a *prima facie* case of a failure to accommodate, a plaintiff must show that: (1) the plaintiff was an individual with a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with reasonable accommodations the plaintiff could perform the essential functions of the position; and (4) "the employer refused to

7

make such accommodations." *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021). The Court concludes that, at minimum, Crawford cannot establish the fourth element of such a claim.

First, the record demonstrates that the Board approved most, if not all, of the accommodations requested to address Crawford's medical conditions. Crawford's Certificate of Medical Release, submitted on March 12, 2020, identified the following work restrictions:

> Restricted to standing longer than 1 hr at a time and talking no more than 30-40 min at a time. No lifting more than 5-10 lbs. May take frequent breaks as needed for increase in symptoms. We are also requesting patient return to a different work site as current site has become hostile.

Cert. Med. Release at 1. Subsequently, on June 1, 2020, Crawford's healthcare provider clarified that the requested accommodations consisted of limiting talking to 30 minutes at a time and limiting walking or standing to 25–30 minutes at a time. On June 3, 2020, Simmons sent Crawford a letter outlining PGCPS's determination that as accommodations: (1) Crawford would be permitted to sit during oral instruction for approximately 30 minutes out of her 76-minute class periods, but would be expected to stand and circulate throughout the class for the remaining period; (2) Crawford would be provided with a stool or chair to use "for a brief respite, if necessary"; and (3) Crawford would be provided with lifting assistance during classroom set up and breakdown, with the option to reach out to the main office if additional lifting assistance became necessary. Simmons Letter at 1–2. The letter also informed Crawford that she could not be reassigned to a different work site due to lack of vacancies for 12-month teaching positions, but that she could elect to transfer voluntarily to a 10-month teaching position in another location.

Crawford has provided no evidence establishing a genuine issue of material fact on whether PGCPS, through these provisions, failed to offer reasonable accommodations to her medical needs. She has offered no argument or evidence to demonstrate that the accommodations offered by the Board on June 3, 2020, which are generally responsive to the requests made by her healthcare

8

provider, did not reasonably address her medical needs and allow her to perform the essential functions of her position. Under these circumstances, the fact that the offered accommodations did not exactly match those she had requested does not establish a failure to provide reasonable accommodations. *Smith*, 12 F.4th at 414 (holding that "an employer is not required to provide 'the exact accommodation that the employee requested,' and in the alternative may provide 'an alternate reasonable accommodation' at its discretion") (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015)). Although PGCPS did not offer a transfer to a comparable position at another worksite, it informed Crawford that it failed to do so because there were no vacant 12-month teaching positions at that time. Where Crawford has provided no evidence to refute that representation, and only a reassignment to a "vacant position" is a form of reasonable accommodation, *see* 42 U.S.C. § 12111, the failure to provide such a transfer does not constitute a failure to provide a reasonable accommodation. *See Wirtes v. City of Newport News*, 996 F.3d 234, 241 (4th Cir. 2021) (stating that "reassignment is a disfavored accommodation that employers are generally under no *obligation* to offer").

Although the only documented request for accommodations in the relevant time period was Crawford's February 27, 2020 request supplemented by the Certificate of Medical Release on March 12, 2020, Crawford asserts in her affidavit that she also asked to work from home. Where Crawford has provided no specific evidence of when and how that request was communicated, to whom it was communicated, and when and how it was denied, it is not clear that she has established that this request constituted a valid request for a reasonable accommodation. *See Kelly v. Town of Abingdon*, 90 F.4th 158, 167 (4th Cir. 2024) ("To properly invoke the ADA, the communication must be 'sufficiently direct and specific,' providing notice that the employee needs a 'special accommodation' for a medical condition."). Even assuming that she made a proper request, where

9

"an employer is not required to provide 'the exact accommodation that the employee requested,'" *Smith*, 12 F.4th at 414 (quoting *Reyazuddin*, 789 F.3d at 415), PGCPS was not required to provide the specific accommodation of telework to address Crawford's medical issues, and its decision not to do so did not constitute a failure to provide a reasonable accommodation in violation of the ADA. In *Smith*, the Fourth Circuit held that where the Drug Enforcement Administration had provided an employee with the reasonable accommodation of a parking pass to address her mobility issues, it was not required to grant the additional request that the employee be authorized to work remotely. *Id.* at 415. Likewise, where Crawford has not provided any evidence to demonstrate that the June 3, 2020 accommodations did not reasonably address her medical needs and permit her to perform the essential functions of her position, she has not provided sufficient evidence to support her claim that the failure to grant remote work constituted a failure to provide a reasonable accommodation.

Finally, where Crawford has focused on the termination of her health benefits after she requested medical accommodations in February and March 2020 and before she was offered the accommodations in June 2020, the Court considers whether she could establish an ADA violation based on an unreasonable delay in providing the accommodations. *See id.* ("In some circumstances, an 'unreasonable delay' may constitute a denial of an accommodation."). Not every delay, however, constitutes an unreasonable delay. For example, a "relatively short delay of a few weeks (or even a few months) in approving a request typically does not support such a claim." *Id.* "Further, a delay may be found reasonable where the record demonstrates the accommodation request is under active consideration." *Id.*

Here, the record does not support the conclusion that the approximately three-month period between the February 27, 2020 request and the June 3, 2020 approval of accommodations, most

10

of which occurred at the early stages of the unanticipated COVID-19 pandemic when schools were shut down, constituted an unreasonable delay. The record demonstrates that even with the sudden closure of schools on March 16, 2020 due to the COVID-19 pandemic, PGCPS held a telephonic interactive meeting with Crawford to discuss the proposed accommodations request on March 20, 2020, approximately three weeks after Crawford submitted the request on February 27, 2020 and, more specifically, only eight days after she submitted medical documentation on March 12, 2020. The record further demonstrates, and Crawford does not dispute, that at the interactive meeting Simmons requested more specificity regarding Crawford's speech and ambulatory limitations, that Crawford did not submit the requested information until sometime between May 18, 2020, when it was dated, and June 1, 2020, when it was received by PGCPS, and that PGCPS granted the accommodations two days later, on June 3, 2020. Where Crawford has provided no evidence to dispute this timeline of events, which reflects that for most of the elapsed time before the grant of accommodations, PGCPS was waiting for Crawford to obtain and submit additional information from her healthcare provider, the Court concludes that the record does not support a finding of an unreasonable delay that could constitute an ADA violation for a failure to provide reasonable accommodations. *See Smith*, 12 F.4th at 415 (finding that a five-week period between a request for a parking space and the grant of it as an accommodation did not establish an unreasonable delay in part because during that period the agency had requested and waited for updated medical documentation); *Oakley v. DeJoy*, No. 23-CV-42-FL, 2024 WL 1286205, at *7 (E.D.N.C. Mar. 26, 2024) (concluding that there was no unreasonable delay where "about four months passed between plaintiff's initial request and the accommodation offer, and only about 2–3 months passed between when plaintiff updated his medical documentation and said offer").

11

Crawford's assertion in her brief that there was an unreasonable delay because she initially requested accommodations on "May 24, 2019" does not alter this conclusion. Opp'n at 6, ECF No. 49. In the Complaint, Crawford made no reference to requesting an accommodation on or about that date, and she did not assert any claim arising from such a request. Rather, the factual allegations and disability discrimination claim refer only to the requests for accommodations made from February 2020 forward. A plaintiff may not amend the complaint through assertions made in a brief on a dispositive motion. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997). Even if the Complaint were to be construed or amended to assert a claim based on a 2019 request for an accommodation, the Board correctly argues that such a claim would have to be dismissed because it was not asserted in Crawford's EEOC Charge. *See Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012) (holding that a plaintiff fails to exhaust administrative remedies, as required to advance a Title VII claim, where the EEOC charge of discrimination "reference[s] different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit"). Here, the EEOC Charge states that the alleged discrimination occurred on March 9, 2020, and as in the Complaint, it refers only to the requests for accommodations beginning in or about March 2020 and not to any such requests from 2019. Thus, Crawford's argument based on her May 24, 2019 request for a reasonable accommodation cannot succeed.

For all of these reasons, the Court concludes that Crawford has failed to present sufficient evidence to support an ADA claim for a failure to provide a reasonable accommodation. The Motion for Summary Judgment will therefore be granted as to that claim.

### B.    Disparate Treatment

The Court also considers whether the Board is entitled to summary judgment on the disability discrimination claim to the extent that it is construed as a claim of disparate treatment based on the denial of Crawford's request to work remotely as compared to other teachers.

Under the ADA, disability discrimination in employment includes "limiting" or "classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." 42 U.S.C § 12112(b)(1).  To establish a *prima facie* case of a disparate treatment claim under the ADA, Crawford must prove that: (1) she has a disability; (2) she was subjected to a materially adverse employment action; (3) she was performing the essential functions of her position "at a level that met [her] employer's legitimate expectations"; and (4) "the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 315 n.9 (4th Cir. 2017). "If the employee makes this showing, 'the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 379 (4th Cir. 2022) (quoting *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)). "If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was 'actually a pretext for discrimination.'" *Id.* (quoting *Lettieri*, 478 F.3d at 646). At that point, the plaintiff's burden to demonstrate pretext has merged with the ultimate burden to prove that the plaintiff has been the victim of intentional discrimination. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). Accordingly, to satisfy the pretext requirement, a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *Adams v. Trustees of the*

13

*Univ. of N.C.–Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)).

Here, on the undisputed facts, the Court concludes that Crawford has not provided sufficient evidence of disparate treatment discrimination because she has not shown circumstances that raise a reasonable inference of unlawful discrimination. The only evidence submitted by Crawford on this issue is her statement in her affidavit that "[e]ffective March 17, 2020, 100% of the teachers employed by the Prince George's County Board of Education that require reasonable accommodations and that did not require reasonable accommodations worked from home until the latter part of June 2021." Crawford Aff. ¶ 17, Opp'n Ex. 4, ECF No. 49-4. An inference of discrimination may arise from evidence that similarly situated comparator employees from outside the protected class were treated more favorably under similar circumstances. *See Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995) (stating that where a protected class and another class of persons are subject to disparate treatment and "the classes are similarly situated in most relevant respects except their protected status (e.g., gender or race), there arises a rational inference of discrimination on the basis of that status"). Here, however, Crawford's reference to the decision to have all PGCPS teachers work from home as of March 17, 2020, one day after PGCPS closed all schools due to the COVID-19 pandemic, fails to account for the distinction that unlike those teachers, Crawford was on an unpaid leave of absence or was in a "no pay status" as of that date. She has provided no evidence that any similarly situated teacher outside of her protected class, such as a teacher who was on an unpaid leave of absence for reasons other than a disability as of the onset of the COVID-19 pandemic, was then immediately transferred to paid, remote work status. *See id.* Without any evidence that other teachers in a similar leave and pay status were treated more

14

favorably in relation to the transition to remote work, her reference to other teachers does not support an inference of discrimination.

The remainder of the record does not advance Crawford's claim. She has failed to offer any direct evidence, such as statements exhibiting an intent to discriminate against individuals with disabilities, that would support a reasonable inference that she was denied the opportunity to work remotely based on her disability. As discussed, the sequence of events surrounding her request for accommodations for her medical needs in March 2020, the interactive meeting, the request for supplemental information, and the grant of accommodations in June 2020 do not support a finding of unreasonable delay in order to deny her pay. *See supra* part II.A; *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 173 (4th Cir. 2024) (finding no inference of unlawful discrimination where the defendants offered accommodations and "signaled a willingness to negotiate with her regarding her" remaining requests). Crawford has also failed to identify any other teachers with disabilities who were denied remote work status in the same time frame whose experience could bolster an inference of discriminatory intent. *See Calobrisi v. Booz Allen Hamilton, Inc.*, 660 F. App'x 207, 210 (4th Cir. 2016) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." (quoting *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990))); *Kozlowski v. Hampton Sch. Bd.*, 77 F. App'x 133, 149 (4th Cir. 2003) (concluding that the district court should have admitted evidence of other instances of similar discriminatory conduct against other employees on the issue of discriminatory intent). Finally, although Crawford references the fact that her health insurance benefits were terminated during this time frame, the Board had notified her as early as 2019 that such benefits would terminate unless she "had been authorized for a leave of absence program," JSUF ¶ 10, and there is no evidence that any PGCPS official

15

affirmatively took steps to terminate her health insurance benefits, much less based on discriminatory intent.

"Although courts must carefully consider summary judgment when intent is an issue, '[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (alterations in original) (first citation omitted) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). Where Crawford has failed to present sufficient evidence to support an inference that the failure to grant her remote work was motivated by an intent to discriminate based on disability, the Court will grant the Motion for Summary Judgment. The Court therefore need not address the Board's remaining arguments relating to summary judgment.

## CONCLUSION

For the foregoing reasons, the Board's Motion for Summary Judgment will be GRANTED, and judgment will be entered in favor of the Board. A separate Order shall issue.

Date:   December 23, 2024

THEODORE D. CHUANG
United States District Judge

16